**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| DEANGELO THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07-CV-114 CAS |
| | ) | |
| ALFORD NORTHERN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, a prisoner, brought this action under 42 U.S.C. § 1983 for alleged violations of his First and Eighth Amendment rights. Plaintiff claimed his First Amendment rights were violated when defendants tried to feed him a meal containing pork. Plaintiff claimed his Eighth Amendment rights were violated when defendants sprayed him with pepper spray and did not subsequently treat him or allow him to adequately remove the pepper spray. Defendants have moved for summary judgment on the grounds that plaintiff has failed to show that his constitutional rights were violated and qualified immunity. The Court will grant the motion as to plaintiff's First Amendment claim. The Court will deny the motion as to plaintiff's Eighth Amendment claim regarding defendants' use of pepper spray.

**I.      STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant a motion for summary judgment if all of the information before the court shows that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." Roberson v. Hayti Police Dept., 241 F.3d 992, 994 -995 (8th Cir. 2001) (citations omitted). "Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." Id. at 995.

In determining whether the moving party has met its burden, all evidence and inferences are to be viewed in the light most favorable to the non-moving party. Johnson v. Enron Corp., 906 F.2d 1234, 1237 (8th Cir. 1990).

## II.     BACKGROUND

Plaintiff is incarcerated at Southeast Correctional Center ("SECC"). Defendants are Alford Northern (Correctional Officer, SECC), Gary Rusher (same), Ray Hopper (same), Stephen Clark (same), Daniel Kirkman (same), Jonathan Rice (same), and Robert Hooper (CSI Supervisor).

On February 16, 2006, at 3:45 p.m. defendant Rusher offered plaintiff a pork food-tray for his dinner meal. Plaintiff refused the meal, telling Rusher that he was supposed to get a non-pork

meal. Rusher told plaintiff that there was no indication on plaintiff's door that he was supposed to get a non-pork meal. Rusher then informed the control room that plaintiff had refused his meal.

Plaintiff alleges that he had not eaten pork for seven years because of his religion. However, there is no evidence that plaintiff ever told officials at SECC that he had a religious preference at all or that he could not eat pork because of his religion. On August 3, 2005, plaintiff was asked by SECC officials to state a religious preference and he refused to do so. And the Missouri Department of Corrections' ("MDOC") "Face Sheets" from March 4, 2005, through March 31, 2007, state that plaintiff has "No Religious Preference."

Soon after Rusher reported that plaintiff had refused his meal, plaintiff saw another prisoner receive what plaintiff believed to be a non-pork meal. Plaintiff then pressed his emergency button several times but prison officials did not respond.

At approximately 5:00 p.m. plaintiff declared a medical emergency, claiming that he had abdominal pain, chest pain, and a headache. Plaintiff was evaluated by the nurse and returned to his cell.

After he was placed back in his cell, plaintiff placed his arm through the food port of his cell door. Plaintiff says he stuck his arm through the food port to get defendants' attention. Defendants characterize the act as "taking the food port hostage."

Plaintiff was allowed to keep his arm through the food port for nearly four hours. Plaintiff says that at about 7:00 p.m. Rusher told him, "nobody's coming to see you and the Captain said that you could hold the food port all night as long as you don't throw nothing out of it." Plaintiff says that during this time he also heard Northern say, "I'm going to mace him tonight!"

Sometime between 7:00 and 8:40 p.m. Rice authorized a planned use of force to make plaintiff relinquish the food port. The use of force was to be videotaped by Rusher. Before the use of force was authorized, plaintiff's medical records were checked for any medical condition that would preclude the use of pepper spray.

At about 8:40 p.m. Northern approached plaintiff's cell carrying an MK-46 pepper spray dispenser.[1] Northern ordered plaintiff to remove his arm from the food port. Plaintiff refused, and Northern attempted to insert the wand into plaintiff's cell to administer pepper spray. Plaintiff and Northern struggled briefly; plaintiff managed to bend the MK-46's wand at one point. Northern eventually inserted the wand into the cell and sprayed a burst of pepper spray into plaintiff's face.

In their statement of material facts, defendants say that "[plaintiff] admits that he disobeyed a verbal directive to remove his arm and relinquish the food-port." However, on the cited page of plaintiff's complaint, plaintiff says that he "stood up to relinquish the food-port" as soon as Northern approached him with the MK-46. While it is apparent from the videotape that plaintiff did not relinquish the food port when Northern approached plaintiff's cell with the MK-46, defendants have failed to show that plaintiff refused any order to relinquish the food port before that took place.

After spraying plaintiff with pepper spray, Northern left the area of plaintiff's cell. Plaintiff was left alone in his cell. Unable to see, plaintiff resorted to putting his head into his toilet to gain relief from the pepper spray. Plaintiff says the toilet water did not help.

---

[1]As shown on the videotape of the incident, the MK-46 is a very large cannister resembling a fire extinguisher. It is also apparent from the video that the MK-46 releases a very high volume of pepper spray in a short burst. Additionally, the manufacturer of the MK-46 states on its website that the MK-46 "produce[s] high-volume streams for an extended range of crowd-management options." See http://www.defense-technology.com/ (last visited August 4, 2008).

At 9:00 p.m. plaintiff was taken from his cell to a strip cage where he was assessed by the nurse. The nurse noted that plaintiff had "red, watery eyes," but she did not treat him in any way. In the section of her notes titled "Instructions to Patient," the nurse wrote "Stop doing things that result in 'use of force.'" The nurse's notes also indicate that plaintiff suffers from mental illness.

Plaintiff was then returned to his cell, which had not been cleaned. At about 9:45 p.m. Rusher removed plaintiff from his cell and took him to the strip cage because he was being placed on limited property status. Plaintiff says that Hooper was in charge and would not allow anyone to clean plaintiff's cell or allow plaintiff to shower. Rice and Rusher returned plaintiff to his cell at approximately 10:00 p.m.

Back in his cell, the most plaintiff could do to try to get relief from the pepper spray was to continue dunking his head into his toilet. After about twenty minutes of doing so, plaintiff was able to open his eyes. Plaintiff says that there was a puddle of pepper spray on the floor and that his clothes were soaked through with the substance. Plaintiff claims that his "skin burned as if [he] was standing in a fire and each time [he] took a deep breath [his] lungs constricted and [he] began coughing."

At approximately 10:52 p.m. Kirkman approached plaintiff's cell and read to plaintiff the conduct violations issued to him for resisting during the use of force. Plaintiff explained his predicament to Kirkman, and Kirkman gave plaintiff some towels. Plaintiff says Kirkman wanted to give plaintiff a brown bag lunch but that Hooper would not allow him to do so.

At about 11:45 p.m. Hopper and Clark were making rounds and plaintiff told them about the conditions in his cell. Plaintiff asked them to have someone clean his cell. According to plaintiff, Hopper said he would have it cleaned.

At approximately 4:00 a.m. Hopper had an inmate porter clean plaintiff's cell. At the same time, plaintiff was given a towel, clean boxer-shorts, and a clean t-shirt. Plaintiff was not, however, given any soap or allowed to shower.

Plaintiff claims that his vision has diminished considerably since the date of the incident. Plaintiff further claims that he has suffered from headaches and from a skin rash since the incident.

## III.    DISCUSSION

"Qualified immunity protects state actors from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Maness v. Dist. Court, 495 F.3d 943, 944 (8th Cir. 2007). To determine whether a state actor is entitled to qualified immunity, the Court must resolve two questions: first, whether the official deprived plaintiff of a constitutional right, and second, whether that right was so clearly established as the time that a reasonable official would have understood that his or her conduct was unlawful under the circumstances. Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007).

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." Id. (quotation omitted). "The test for reasonableness or good faith application of force depends on 'whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their

forceful response, and the extent of the inmate's injury.'" Id. (quoting Treats v. Morgan, 308 F.3d 868, 872 (8th Cir.2002)).

In determining whether an application of pepper spray implicates the Eighth Amendment requires a fact-specific inquiry as to the extent of pain inflicted upon the inmate. Lawrence v. Bowersox, 297 F.3d 727, 731 (8th Cir. 2002); Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). The use of pepper spray must be "reasonable under the circumstances," but it must not be "punitive, arbitrary, or malicious." Treats v. Morgan, 308 F.3d 868, 873 (8th Cir. 2002). The courts are more likely to find that the use of pepper spray was reasonable if the correctional officer could have feared for his or her safety. Id. The courts are less likely, however, to find the use of pepper spray reasonable where the prisoner posed no threat to the security of the institution. Id. at 873-74. In this context, it is paramount that the Court "'view the facts and the inferences to be drawn from them in the light most favorable to [plaintiff].'" Johnson, 453 F.3d at 1113 (quoting Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc., 382 F.3d 852, 855-56 (8th Cir. 2004)).

A.      Plaintiff's Eighth Amendment Claims

To the extent that plaintiff is attempting to bring an Eighth Amendment claim because he missed a single meal, such claim fails to state a claim upon which relief can be granted. Wilkins v. Roper, 843 F. Supp. 1327, 1328 (E.D. Mo. 1994).

Defendants argue that they are entitled to summary judgment on plaintiff's Eighth Amendment claims relating to the pepper spray incident because the use of force was reasonable under the circumstances and because plaintiff did not suffer sufficiently serious injuries to implicate the Constitution. Defendants reason that plaintiff's seizure of the food port for four hours and his refusal to follow Northern's directive to relinquish it were sufficient reasons to apply pepper spray to

plaintiff's face and body. Defendants contend that plaintiff did not suffer any serious injuries because he was permitted to dunk his head into the toilet of his cell for relief from the burning sensation.

Defendants' arguments are without merit. By their own admission, defendants allowed plaintiff to occupy the food port for four hours. This fact undermines defendants' contention that it was necessary to remove plaintiff's arm from the food port to maintain the security of the institution. It is hard for the Court to believe that defendants would have let plaintiff occupy the food port for four hours had the security of the institution been at stake. As a result, a question of fact remains as to whether there was an objective need for the use of force.

Additionally, Northern used a very large pepper spray dispenser that released very high volumes of pepper spray in short bursts. This particular use of force may have been an excessive response to the situation. As a result, there is a question of fact as to whether there was a proper relationship between the need for force and the amount of force used.

It is also extremely problematic for defendants that they did not allow plaintiff to wash the pepper spray off of his body after the use of force. Defendants argue that because plaintiff was able to dunk his head into his toilet they fulfilled their duty to protect his health and safety. This is the kind of argument that lawyers simply should not make. Not only was leaving plaintiff alone with his toilet a woefully inadequate response to the harm done to plaintiff by spraying him with pepper spray, it made the situation potentially much worse by exposing plaintiff's eyes and face to the types of harmful bacteria that live in toilets. It is undisputed that defendants left plaintiff in his uncleaned cell without adequate facilities to wash for several hours. As a result, there is a question of fact as to whether defendants properly attempted to temper the severity of their use of force and properly protect plaintiff from excessive injury.

Under these circumstances, defendants are not entitled to summary judgment on plaintiff's Eighth Amendment claims relating to the use of pepper spray.

        B.      <u>Plaintiff's First Amendment Claim</u>

Title 42 U.S.C. § 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." When a prisoner brings exhausted claims alongside unexhausted claims, the court should proceed with the exhausted claims and dismiss the unexhausted claims. <u>Jones v. Bock</u>, 127 S. Ct. 910, 923-24 (2007).

It is undisputed that plaintiff never filed a grievance citing interference with his right to practice his religion. Plaintiff argues that because he did file grievances claiming that defendants were indifferent to his serious medical needs an inference should be made that he exhausted administrative remedies as to any First Amendment claim. This is a *non sequitur*. As a result, the Court finds that plaintiff failed to exhaust administrative remedies as to his First Amendment claims, and the Court shall grant summary judgment in favor of defendants on this claim.

Additionally, even if plaintiff had exhausted his administrative remedies as to his First Amendment claim, the Court would grant summary judgment in favor of defendants because there is no evidence that plaintiff ever told defendants that he had a religious preference.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. Defendants' motion for summary judgment is granted on plaintiff's claim that being denied a single meal violated the Eighth Amendment and on plaintiff's First

Amendment claim. Defendants' motion for summary judgment is denied on plaintiff's claims that the

use of force violated the Eighth Amendment. [Doc. 26]

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 5th day of August, 2008.